NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| | : | Criminal Case No. 13-29 |
| UNITED STATES, | : | (FSH) |
| | : | |
| v. | : | **OPINION & ORDER** |
| | : | |
| MARTIN TREJO, et al., | : | March 19, 2014 |
| | : | |
| Defendants. | : | |
| | : | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant Martin Trejo's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 [Docket No. 125]. The Court has considered Defendant's brief in support of his motion; the Government's opposition [Docket No. 126]; and the Defendant's filing on March 4, 2014 [Docket No. 127].

**I. BACKGROUND**

On June 20, 2012, Defendant Martin Trejo was charged with stealing immigration forms from the Government. The indictment alleged that, during the Defendant's employment as a contractor for the United States Citizenship and Immigration Services (USCIS), he stole blank Form I-797 Notice of Action immigration forms from a warehouse in California. USCIS uses Form I-797 to communicate an immigration benefit to applicants and other agencies. The Defendant sold blank versions of these immigration forms to an intermediary, Karine Michmichian, who in turn sold them to a group of individuals, led by Young-Kyu Park. Members of the Park conspiracy filled in the blank immigration forms with their customers'

personal information, filled in false immigration status, and used the completed forms to fraudulently obtain driver's licenses on behalf of those customers. The superseding indictment charged the Defendant with: transporting stolen property in interstate commerce in violation of 18 U.S.C. § 2314; and a dual-object conspiracy in violation of 18 U.S.C. § 371 – with the objects of the conspiracy including the theft government property and the transportation of stolen property in interstate commerce.

On January 23, 2014, a unanimous jury found Defendant guilty of both counts of the superseding indictment.  Defendant has moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

## II.  LEGAL STANDARD

"A verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987) (quoting *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983)); *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) ("A finding of insufficiency should be confined to cases where the prosecution's failure is clear.") (internal quotation marks omitted). Defendant bears a "very heavy burden." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). The court does not weigh evidence or determine the credibility of witnesses in making this determination but rather examines the totality of the evidence, both direct and circumstantial, and credits all available inferences in favor of the government. *United States v. Pendleton*, 636 F.3d 78, 84 (3d Cir. 2011).

## III.  DISCUSSION

The Defendant contests the value of the stolen property, contending that the evidence does not support the jury verdict as to the necessary value to meet the statutory requirements.  18 U.S.C. § 2314, provides:  "[w]hoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud" shall be guilty of violating the National Stolen Property Act.  The value of stolen property is to be determined, under 18 U.S.C. § 2311, by assessing the "face, par, or market value, whichever is the greatest."  "As a general rule, [market] value will be determined by market forces the price at which the minds of a willing buyer and a willing seller would meet.  If no commercial market for particular contraband exists, value may be established by reference to a thieves' market." *United States v. DiGilio*, 538 F.2d 972, 979 (3d Cir. 1976) (internal quotation marks and citations omitted).  "[T]he 'value' element of 18 U.S.C. § 2314 may be proved by evidence of the stolen property's value either at the time of theft or at the time of transportation." *United States v. Moore*, 571 F.2d 154, 156 (3d Cir. 1978).

Under § 2314, the value of individual shipments of stolen property in interstate commerce may be aggregated to reach the $5,000 jurisdictional minimum value. *Schaffer v. United States*, 362 U.S. 511, 518 (1960); 18 U.S.C. § 2311 ("the aggregate value of all goods, wares, and merchandise, securities, and money referred to in a single indictment shall constitute the value thereof.").

The Defendant disputes whether the Government proved that the value of the stolen forms exceeded $5,000.  For the stolen property at issue, blank I-797 immigration forms, he argues: (a) that value should be assessed based on the amount the Government paid to produce these forms,

which is about one cent per page; or (b) that the Government's evidence of the market value is not probative of the value of the blank forms the Defendant sold.

(a) Cost of Production

Defendant's first argument – that the value of the stolen forms should be calculated based on the cost the owner incurred in printing those forms – has been rejected by the Third Circuit. In *Moore*, the defendant was accused of transporting blank Ticketron concert tickets, which another individual had stolen. *United States v. Moore*, 571 F.2d 154, 157 (3d Cir. 1978). The Circuit noted that courts have consistently held that the value of blank documents, such as money orders, is not the cost to the Government of printing them, but the value blank forms would fetch on the black market. *Id.* The Court concluded that blank concert tickets are similarly valued at the amount a thief would be able to receive for counterfeit tickets on the black market, rather than the amount that the original owner paid to produce the tickets. *Id.* at 158. Here, blank immigration forms are worth substantially more than the one-cent cost of production because those who use these forms illicitly to obtain immigration benefits for paying customers are willing to pay a higher sum on the black market. These forms are stolen precisely because they are a necessary and valuable part to the scheme. *See Moore*, 571 F.2d at 157. Thus, a proper measure of the value of the immigration forms is the price willing buyers would pay a seller on the black market. The jury was not limited to assessing the value as the cost of production.

(b) Evidence of Value

Defendant next asserts that there was no probative evidence that the value of the blank immigration forms exceeded the statutory minimum. Specifically, he contends that the

Government improperly relied upon "the price that the Park criminal enterprise charged their clients per page." (Def.'s Br. 1, Docket No. 125). This is improper, Defendant asserts, because the Park conspiracy charged a price for a final product – government issued identification – which is not representative of the price of blank immigration forms.

The retail price that customers paid the Park conspiracy, however, was not the only evidence of value that the Government introduced.[1]  Instead, the Government independently offered evidence of the market price for batches of Form I-797 on the thieves' market. It proved that the Defendant sold hundreds of these blank I-797 forms to an intermediary, Michmichian.  Special Agent Nathan Kim testified that the Defendant admitted during an interview that he provided batches of forms to Michmichian on at least three separate occasions between 2010 and 2012, each consisting of between 200 and 300 forms. (Trial Tr. Jan. 23, 2014, 24:24-25:11; 27:22-29:11).  Another witness, Jong-Hyek Park, testified to the price he paid Michmichian for each of the batches of forms, with each batch consisting of between 200 and 300 I-797 forms. (Trial Tr. Jan. 17, 2014, 100:3-104:22).  Park stated that he paid between $2,000 and $3,000 for each

---

[1] The Government introduced evidence that the Park conspiracy charged customers between $2,500 and $4,000 to obtain a driver's license.  (Trial Tr. Jan. 16, 2014, 9:10-16).  Jong-Hyek Park testified that the "most important item" in the scheme to obtain driver's licenses was each Form I-797. (Trial Tr. Jan. 17, 2014, 121:24-122:4).  The Government argues that one way of calculating the value of the stolen property is the retail value of each form, $2,500-4,000, multiplied by 600, the total amount of forms the Defendant admitted to selling. Because there was other evidence, including the value of blank forms on the thieves' market, from which a reasonable jury could find beyond a reasonable doubt that the price of the forms exceeded $5,000, the Court need not decide whether the retail price charged by the Park conspiracy reflected the value of the stolen property.  Nor need the Court determine whether the Park conspiracy's acts of filling in the blank form, upon which anything may be written, "so substantially alter[ed] the stolen blanks as to render the transported counterfeit [property] essentially different from what was stolen, within the meaning of § 2314." *Moore*, 571 F.2d at 157.

batch. (*Id.*). These forms were in the same condition – blank – as when the Defendant gave them to Michmichian.

Considering the maximum value that the jury might have found based on this evidence, the aggregate value would be $3,000 multiplied by three batches. Thus, giving the Government the benefit of all available inferences, there were facts sufficient for a reasonable jury to conclude beyond a reasonable doubt that the three batches of forms Defendant sold had an aggregate value of $9,000, an amount above the $5,000 jurisdictional threshold. Even the lower price, $2,000 for each of three transactions, would have been sufficient. Because this value reflects "the price at which the minds of a willing buyer and a willing seller would meet" in the thieves' market, *DiGilio*, 538 F.2d at 979, the jury could have reasonably relied upon it as evidence for the value of the batches of forms.

In response, Defendant points to his own testimony[2] that his personal maximum aggregate profit from selling immigration forms was $3,000. He argues that the jury's assessment of the value of the stolen forms cannot exceed the amount the Defendant was actually paid. However, this argument is not supported by law. Moreover, the jury was instructed on valuation, and the jury instruction was consented to by the Defendant. (Trial Tr. Jan. 23, 2014, 2:19-3:2).

The statute permits multiple methods of assessing the value of the property, including "face, par, or market value, whichever is greatest." 18 U.S.C. § 2311. It was for the jury to decide. The jury may have disbelieved Defendant's self-serving testimony about the price he received, instead crediting the Government's evidence of the value paid to Michmichian for the blank forms on the black market. The jury may or may not have believed the Defendant's testimony

---

[2] There was also testimony regarding what price the Defendant claimed he received for the forms during the Government's case-in-chief. (Trial Tr. Jan. 23, 2014, 24:24-25:7).

that he received a maximum of $3,000, but assessed the value under the statute as the greater of the price the blank forms received by the Defendant from Michmichian and the amount the blank forms received in the thieves' market when resold by Michmichian to the Park conspiracy. *See Moore*, 571 F.2d at 158 n.7 (quoting *United States v. Bullock*, 451 F.2d 884, 890 (5th Cir. 1971)). Thus, there was sufficient evidence upon which a reasonable jury could have found beyond a reasonable doubt that the value of the stolen property exceeded $5,000. Choosing between the competing valuation theories was a question of fact; the jury need not have confined their deliberations to the Defendant's statement of value.

Finally, the Defendant "generally contends that the Government failed to present sufficient proof . . . on each other count." (Def.'s Br. 2). The Defendant does not state which other legal element is lacking in evidentiary support, opting instead for a summary catch-all contention. In so doing, the defendant has waived any other claim of insufficiency of the evidence. In the Court's review of the record, there was evidence on both counts sufficient for a reasonable jury to find the Defendant guilty beyond a reasonable doubt.[3]

---

[3] On the charge of transporting stolen property in interstate commerce, the jury reasonably could have found that the Defendant knew the property was stolen because Agent Kim testified that the Defendant confessed to stealing the property from the Government. (Trial Tr. Jan. 23, 2014, 24:24-25:7; 27:22-29:11). There was also evidence that the Defendant's acts caused the property to be transported in interstate commerce, selling the forms to Michmichian who sent them from California to Virginia and New Jersey. (Trial Tr. Jan. 17, 2014, 90:10-12; 103:5-7); *See United States v. Wright*, 363 F.3d 237, 242 (3d Cir. 2004). ("[Section] 2314 does not necessitate proof that the defendant knew that the interstate element was present."). And, as discussed above, there was testimony to support a jury verdict that the forms had a value of at least $5,000, thus satisfying all the elements of § 2314. On the charge of conspiracy to violate federal law, there was testimony that the Defendant formed an agreement with Michmichian to transport stolen property; that the object of the agreement was transporting stolen property in interstate commerce; and that the Defendant committed an act – the theft of Government property – in furtherance of the conspiracy. *United States v. Rigas*, 605 F.3d 194, 206 (3d Cir. 2010). Thus, the evidence on the conspiracy count was sufficient for a conviction.

7

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Defendant's Motion for Judgment of Acquittal is denied.

**ACCORDINGLY IT IS**, on this 19th day of March, 2014, hereby

**ORDERED** that Defendant's Motion for Judgment of Acquittal [Docket No. 125] is

**DENIED**.

**SO ORDERED**

**/s/ Faith S. Hochberg_____**
**Hon. Faith S. Hochberg, U.S.D.J.**